## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

HENRY SANTIAGO,

     Plaintiff,

v.                              CASE NO.: 21-CV-61424-WPD

MEDICREDIT, INC. d/b/a MEDICREDIT,

     Defendant.

_____/

**DEFENDANT'S MOTION (A) TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, INCLUDING A CHALLENGE TO THE CONSTITUTIONALITY OF 15 U.S.C. § 1692c(b) OR (B), IN THE ALTERNATIVE TO STRIKE PARAGRAPHS 16 AND 17 OF THE COMPLAINT**

**Claim of Unconstitutionality**

Respectfully submitted,

  /s/ *Drew P. O'Malley*          
Drew P. O'Malley
Florida Bar No. 106551
SPENCER FANE LLP
201 North Franklin Street, Suite 2150
Tampa, FL  33602
Phone:  813-424-3500
Facsimile:  813-405-8904
domalley@spencerfane.com
ecoutu@spencerfane.com
*Counsel for Medicredit, Inc.*

## <u>TABLE OF CONTENTS</u>

I.   Standard for dismissal under Rule 12(b)(6)................................................................. 2

II.  The Complaint fails to state a claim for relief under the FDCPA. ......................... 2

  A.   Section 1692c(b) and the *Hunstein* decision.................................................. 2

  B.   The Complaint fails to allege Medicredit "communicated" with a prohibited third party "in connection with the collection of any debt."................................................. 3

    1.   The text and legislative history of the FDCPA permits use of letter vendors. .............. 3

    2.   Regulatory opinions and actions support that the FDCPA does not forbid the transmission of information to the Letter Vendor................................................. 8

    3.   Judicial authorities support that the FDCPA permits use of vendors. ......................... 11

    4.   The presumption against unconstitutional construction of statutes does not permit a construction of § 1692c(b) that prohibits a debt collector from providing information to its vendors. ................................................................................................. 13

    5.   Conclusion ................................................................................................. 17

  C.   The Complaint fails to allege a communication to a prohibited third party "in connection with the collection of any debt."................................................. 17

  D.   As to the transmission of information to the "skip trace" agency, the Complaint fails to allege unlawful communication in connection with the collection of a debt. ......................... 18

  E.   The alleged transmissions of information to "scrubbing" agencies is lawful................. 19

  F.   There is no claim stated based on Medicredit's alleged use of other "independent third-party contractors" or transmission of information to unidentified "others." ......................... 21

III.  The Complaint does not state a claim under the FCCPA. .................................. 22

IV.  Certain of the Complaint's allegations are due to be stricken. ........................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdollahzadeh v. Mandarich Law Group, LLP*,
   922 F.3d 810 (7th Cir. 2019) ...................................................19

*Acosta v. Campbell*,
   309 Fed. Appx. 315 (11th Cir. 2009) (unpublished)..........................5, 11

*Almendarez-Torres v. United States*,
   523 U.S. 224 (1998)........................................................5

*American Dental Assn. v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ...........................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................2, 22

*Barbato v. Greystone All., LLC*,
   916 F.3d 260 (3d Cir. 2019)................................................6

*Barr v. Am. Assn. of Political Consultants*,
   --- U.S. ---, 140 S.Ct. 2335 (2020)....................................14, 15

*Blake v. Batmasian*,
   318 F.R.D. 698 (S.D. Fla. 2017).........................................25

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*,
   447 U.S. 557 (1980)......................................................16

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984)....................................................8, 10

*Cohen v. Wolpoff & Abramson, LLP*,
   2008 WL 4513569 (D. N.J. Oct. 2, 2008)..................................12

*Collins v. Yellen*,
   --- U.S. ---, 141 S.Ct. 1761 (2021)......................................14

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*,
   944 F.2d 1525 (9th Cir. 1991), *aff'd* 508 U.S. 49 (1993) .................16

*Comcast Corp. v. Natl. Assn. of African-Am.-Owned Media*,
   --- U.S. ---, 140 S.Ct. 1009 (2020).......................................5

*Flood v. Mercantile Adjustment Bureau, LLC*,
    176 P.3d 769 (Colo. 2008) .................................................................................13

*Forida Bar v. Went for It, Inc.*,
    515 U.S. 618 (1995).........................................................................................16

*Gburek v. Litton Loan Serv. LP*,
    614 F.3d 380 (7th Cir. 2010) ...........................................................................18

*Gruden v. Leikin Ingber & Winters PC*,
    643 F.3d 169 (6th Cir. 2011) ...........................................................................18

*Harrell v. Reynolds Metals Co.*,
    495 So. 2d 1381 (Ala. 1986)..............................................................................6

*Heard v. Mathis*,
    344 So.2d 651 (Fla. 1977)................................................................................23

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    994 F.3d 1341 (11th Cir. 2021) ................................................................ *passim*

*ICC v. Southern Ry. Co.*,
    543 F.2d 534 (5th Cir. 1976) .............................................................................7

*INS v. St. Cyr*,
    533 U.S. 289 (2001).........................................................................................14

*Leonard v. Zwicker & Assocs., PC*,
    713 Fed. Appx. 879 (11th Cir. 2017) (unpublished)...........................................8

*Mack v. Delta Air Lines*,
    639 Fed. Appx. 582 (11th Cir. 2016) (unpublished)...........................................6

*Meyer v. Holley*,
    537 U.S. 280 (2003)...........................................................................................5

*Niven v. Natl. Action Fin. Servs., Inc.*,
    2008 WL 4190961 (M.D. Fla. Sep. 10, 2008) .................................................23

*Novak v. Monarch Recovery Mgmt.*,
    235 F. Supp. 3d 1039 (N.D. Ill. 2016) .............................................................19

*Obduskey v. McCarthy & Holthus LLP*,
    --- U.S. ---, 139 S.Ct. 1029 (2019).............................................................12, 20

*Otto v. City of Boca Raton*,
    981 F.3d 854 (11th Cir. 2020) .........................................................................15

SL 5054470.5

*Pearce v. Rapid Check Collection, Inc.*,
    738 F. Supp. 334 (D. S.D. 1990) ........................................................................................11

*Ponce v. BCA Fin. Servs., Inc.*,
    2011 WL 13175624 (S.D. Fla. May 25, 2011) .......................................................................19

*Powell v. Computer Credit, Inc.*,
    975 F. Supp. 1034 (S.D. Ohio 1997) ...................................................................................13

*Ross v. Chisholm*,
    2006 WL 8432290 (S.D. Fla. Dec. 29, 2006) .......................................................................23

*Sable Communications of Cal., v. FCC*,
    429 U.S. 115 (1989)........................................................................................................15, 16

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)....................................................................................................8, 10, 11

*Smith v. Univ. Community Hosp., Inc.*,
    2019 WL 118045 (M.D. Fla. Jan. 7, 2019)......................................................................23, 24

*Sosa v. DirecTV*,
    437 F.3d 923 (9th Cir. 2006) ........................................................................................16, 17

*Statements of General Policy or Interpretation Staff Commentary On the Fair
    Debt Collection Practices
    Act*, 53 FR 50097 .........................................................................................................8, 9

*Tardi-Osterhoudt v. McCabe, Weisburg & Conway LLC*,
    2019 WL 4242410 (N.D.N.Y. Sep. 6, 2019) .........................................................................12

*TransUnion LLC v. Ramirez*,
    --- U.S. ---, 141 S.Ct. 2190 (2021)........................................................................................6

*United States v. Mead Corp.*,
    553 U.S. 218 (2001)...........................................................................................................10

*United States v. Palomar-Santiago*,
    --- U.S. ---, 141 S.Ct. 1615 (2021)........................................................................................13

*White v. Goodman*,
    200 F.3d 1016 ...............................................................................................................12, 13

**Statutes**

12 U.S.C. § 5512.....................................................................................................................8

15 U.S.C. § 1692...................................................................................................................16

iv

15 U.S.C. § 1692(a) ................................................................................................5

15 U.S.C. § 1692a(2) ....................................................................................4, 11, 12

15 U.S.C. § 1692a(6) ..............................................................................................13

15 U.S.C. § 1692a(6)(D) ...........................................................................................4

15 U.S.C. §§ 1692b(5), 1692f(5) and 1692f(8) ........................................................4

15 U.S.C. § 1692c(b) ..................................................................................... *passim*

15 U.S.C. § 1692e(2) ..............................................................................................21

15 U.S.C. § 1692f ......................................................................................................4

15 U.S.C. § 1692*l*(d) ...............................................................................................8

50 U.S.C. § 3937(a) ................................................................................................21

Bankruptcy Code § 362(a) ................................................................................20, 21

Bankruptcy Code § 524(a)(2) ................................................................................21

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-
203, 124 Stat. 1376-2223 (2010) ......................................................................8

Fair Debt Collection Practices Act ........................................................................12

Fla. Stat. Ann. § 559.72(5) ..............................................................................1, 22

HIPAA .......................................................................................................................6

Servicemembers Civil Relief Act, 50 U.S.C. § 3901, *et seq.* ..............................21

U.S. Code Title 15 ....................................................................................................2

**Other Authorities**

85 F.R. 76734, 76889 (Nov. 30, 2020) ....................................................................4

85 FR 76734, 76738 (Nov. 30, 2020) ......................................................................9

85 FR 76738, 76802 (Nov. 30, 2020) ....................................................................10

86 FR 5766, 5772-75 (Jan. 19, 2021) ....................................................................20

86 FR 5766, 5845 n.446 ...........................................................................................9

CFPB Debt Collection Supervision and Examination Manual, Debt Collection,
     Module 1. Available at
     https://files.consumerfinance.gov/f/documents/cfpb_supervision-and-
     examination-manual.pdf ........................................................................................10

Constitution of the United States First Amendment Petition Clauses ............................14

Fed. R. Civ. P. 8(a) ..................................................................................................2, 24

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 2

Fed. R. Civ. P. 12(f)................................................................................................1, 24

FTC Opinion Letter to Jones (Dec. 30, 1992), *available at*:
     http://www.cardreport.com/laws/fdcpa/ftc-opinion/jones.html...............................18

FTC Opinion Letter to Zbrzeznj (Sep. 21, 1992), *available at*:
     http://www.cardreport.com/laws/fdcpa/ftc-opinion/zbrzeznj.html............................9

Health & Human Services, *Business Associates*, available at
     https://www.hhs.gov/guidance/document/bas ...........................................................7

https://files.consumerfinance.gov/f/documents/20160727_cfpb_Third_Party_Debt
     _Collection_Operations_Study.pdf............................................................................9

https://scra.dmdc.osd.mil/scra/#/single-record ...........................................................21

https://www.flrules.org/gateway/notice_Files.asp?ID=10534799 ................................24

https://www.hhs.gov/hipaa/for-professionals/covered-entities/sample-business-
     associate-agreement-provisions/index.html................................................................7

SL 5054470.5

Medicredit, Inc. moves to dismiss Henry Santiago's Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to strike paragraphs 16 and 17 of the Complaint pursuant to Fed. R. Civ. P. 12(f). Santiago's theory of liability rests on a decision by a panel of the Eleventh Circuit Court of Appeals that is likely to be vacated. That decision does not apply here and, in any event, it was wrongly decided.

## Introduction

Santiago alleges Medicredit tried to collect a consumer debt from him. (DE 4-2, ¶ 8). Santiago claims Medicredit sent information about his debt to a third party—called the "Letter Vendor" here and the "Third-Party" in the Complaint—to have the Letter Vendor prepare a letter to Plaintiff from Medicredit in an attempt to collect the debt. (DE 4-2, ¶¶ 20-22). He also claims Medicredit sent "Plaintiff's personal information" to "others" through a "skip trace" service, "bankruptcy, SCRA, probate and other 'scrubbing' services," and other unidentified "independent third-party contractors." (DE 4-2, ¶ 25).

Santiago argues Medicredit violated two laws. ***First***, the Fair Debt Collection Act's prohibition against debt collectors "communicat[ing], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."[1] 15 U.S.C. § 1692c(b). ***Second***, the Florida Consumer Collection Practices Act's prohibition against disclosing "to a person other than the debtor or his or her family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla. Stat. Ann. § 559.72(5).[2]

The Complaint fails to state a claim upon which relief can be granted. As to the FDCPA claim, the information at issue was not transmitted in a "communication" made "in connection with the collection of any debt." And, if the FDCPA is given the construction Plaintiff advances, it is unconstitutional. Finally, Plaintiff fails to allege key facts about the details of the alleged

---

[1] This general prohibition is subject to certain exceptions discussed further below.

[2] The FDCPA and FCCPA counts each allege that the transmission of information to the "Third-Party" violated the law. The Complaint defines "Third-Party" to mean only the Letter Vendor. Thus, the Complaint fails to allege that the disclosures to "others" violated any law. Out of abundance of caution, however, this Memorandum will discuss how those alleged disclosures, like those to the Letter Vendor, were lawful.

SL 5054470.5

disclosures necessary to satisfy the pleading requirements of Fed. R. Civ. P. 8(a). As to the FCCPA claim, there was no covered third-party disclosure: the third parties alleged to have received information had a legitimate business need for it, Plaintiff does not adequately allege that the disclosure harmed his reputation, the information is not alleged to have been false, and, in any event, Plaintiff omits to allege Medicredit knew or had reason to know otherwise.

For these reasons, and as more fully explained below, the Complaint is due to be dismissed under Fed. R. Civ. P. 12(b)(6). As an alternative, Medicredit requests that paragraphs 16 and 17 of the Complaint be stricken because they are irrelevant, as also discussed below.

**Memorandum of Law**

Plaintiff fails to state a claim upon which relief can be granted.

## I.      Standard for dismissal under Rule 12(b)(6).

A complaint must contain enough factual information, taken as true, to show a plausible right to relief. *American Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1289-90 (11th Cir. 2010). A "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor does tender of "naked assertions devoid of further factual enhancement." *Id.* (quotations and alterations omitted).

## II.     The Complaint fails to state a claim for relief under the FDCPA.

Plaintiff fails to state a claim under the FDCPA. The text of the FDCPA, its legislative history, applicable regulatory authority, judicial authorities, and the constitutional avoidance canon each preclude the Plaintiff's read of the FDCPA. If the Court agrees the FDCPA means what Plaintiff says, then it is unconstitutional.

### A.      Section 1692c(b) and the *Hunstein* decision.

15 U.S.C. § 1692c(b) states as follows:

> Except as provided in section 1692b of [Title 15 of the U.S. Code], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Before analyzing the statute, Medicredit discusses *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021) because it is the legal basis for the theory of liability asserted here. In *Hunstein*, a debt collector used a vendor called CompuMail to prepare

2

and send letters to the plaintiff. The plaintiff alleged the defendant violated § 1692c(b) by sending CompuMail information about his debt. The Court held the plaintiff stated a claim.

Before considering the Court's holding, it is important to understand what was *not* at issue there. The parties agreed the defendant's transmission of information to CompuMail was a "communication." 994 F.3d at 1349. Thus, *Hunstein* does not answer one of the questions raised here: whether sending information to a vendor is a "communication" at all.

The parties instead focused on whether the information was transmitted "in connection with the collection of any debt." The Court held it was. The Court reasoned the term "in connection with" means a "loose" relationship—a lax standard the Court found satisfied. *Id.* The Court's holding, therefore, is that a debt collector violates the FDCPA by sending information—assuming same is a "communication"—about a debt to anyone other than those listed in § 1692c(b). *Id.*

The Court recognized the case presented an issue of first impression. *Id.* at 1344. The Court also realized its "interpretation of § 1692c(b) runs the risk of upsetting the status quo in the debt collection industry," that debt collectors likely "share information about consumers not only with dunning vendors like CompuMail, but also with other third-party entities," and that complying with its holding may come "at great cost" to debt collectors that "may not purchase much in the way of 'real' consumer privacy, as we doubt the CompuMails of the world routinely read, care about, or abuse the information that debt collectors transmit to them." *Id.* at 1352. Indeed, the Court wrote, the "consequences" of its holding may not be "particularly sensible or desirable." *Id.*

As explained below, *Hunstein* does not apply here and, even if it did, the construction ascribed to § 1692c(b) in *Hunstein* renders that statute unconstitutional. Medicredit also will explain, to preserve the issue for appeal, why *Hunstein* was wrongly decided.

**B.     The Complaint fails to allege Medicredit "communicated" with a prohibited third party "in connection with the collection of any debt."**

The text and legislative history of the FDCPA, an unbroken line of regulatory authorities, judicial decisions, and the constitutional avoidance canon support that Medicredit acted lawfully.

**1.     The text and legislative history of the FDCPA permits use of letter vendors.**

The FDCPA and its legislative history do not support that using a letter vendor is unlawful. In particular, the statute does not provide that sending information to a letter vendor is a "communication"—an issue unaddressed in *Hunstein*. *Hunstein*, 994 F.3d at 1349.

3

### a.      The text and legislative history of the FDCPA.

The text of the FDCPA shows that sharing information about a debt with a letter vendor is lawful. There are two reasonable interpretations of the law that lead to this outcome. First, a letter vendor is a "medium" of communication, rather than the recipient of a communication. Second, under common law principles of agency and statutory text, a vendor is not a third party.

### 1)  The medium/person dichotomy.

§ 1692a(2) defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." A "communication" occurs when information is conveyed "to any person," not when it reaches the "medium" of conveyance.

The FDCPA distinguishes between a recipient and the medium through which information is sent. For instance, it does not stop a debt collector from suing on a debt. Nonetheless, while process servers are excluded from the definition of "debt collector," 15 U.S.C. § 1692a(6)(D), they do not appear in § 1692c(b) as people with whom a debt collector may communicate about a debt. That is because although process servers receive and can view information in a complaint, they are not recipients of it. Rather, they are a "medium" through which information is conveyed.

Likewise, while the FDCPA restricts debt collectors' use of telegrams, 15 U.S.C. §§ 1692b(5), 1692f(5) and 1692f(8), it does not prohibit it. A debt collector must disclose the content of a telegram to Western Union. The FDCPA nonetheless permits telegram communications with consumers about debts. 15 U.S.C. § 1692f. That is because Western Union is a medium, not a recipient.

Similar issues arise with modern technology too. The Bureau of Consumer Financial Protection (the "CFPB") recently confirmed that, subject to some restrictions, debt collectors may communicate with consumers via email, text message, and ringless voicemail. *See, e.g.*, 85 F.R. 76734, 76889 (Nov. 30, 2020) (procedures for email and text message communications) and *id.* at 76901 (ringless voicemail). Those technologies require that service providers receive the transmitted information. If such receipt was prohibited, the regulations would be pointless.

In short, sending information about a debt to a medium for the purpose of conveying that information to the consumer is not a "communication" to a prohibited third-party; rather, it is communication made through a medium to the consumer.

The legislative history of the FDCPA supports this conclusion. The FDCPA states its purposes include stopping "abusive debt collection practices" that "contribute to," among other

4

things, "invasions of individual privacy." 15 U.S.C. § 1692(a). The legislative history explains the "invasions of individual privacy" that troubled Congress: "a debt collector may not contact third persons *such as a consumer's friends, neighbors, relatives or employer* [because s]uch contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." *Acosta v. Campbell*, 309 Fed. Appx. 315, 320 (11th Cir. 2009) (unpublished) (emphasis added), quoting S. Rep. No. 95-382.

As acknowledged in *Hunstein*, letter vendors are unlikely to care about the information they receive from debt collectors, much less take any adverse action against a consumer as a result. They thus do not fall within the FDCPA's stated aims, and the statute must be read in conjunction with the intent expressed by Congress in the statute and—in this case—the legislative history.

### 2)  Agency Principles.

There is another way to reach the same result. The term "any person" does not include the "debt collector." Rather, as indicated by the section heading, it means "third parties." 15 U.S.C. § 1692c(b); *see also Hunstein*, 994 F.3d at 1341 (§ 1692c(b) "prohibits debt collectors from communicating consumers' personal information to third parties"); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (section headings may illuminate meaning).

A strict construction of § 1692c(b) would prohibit employees of a corporate debt collector from discussing debts internally: the definition of "debt collector" means "any person" who undertakes certain activities, and many employees of a corporate debt collector will engage in those activities. But prohibiting intrafirm communications is not what Congress wanted.

One need not read the statute in a manner that thwarts Congressional intent. One can avoid doing so by recognizing Congress legislates against the "backdrop of the common law," including agency principles, *Comcast Corp. v. Natl. Assn. of African-Am.-Owned Media*, --- U.S. ---, 140 S.Ct. 1009, 1016 (2020), and it must speak clearly and directly to abrogate them, *e.g. Meyer v. Holley*, 537 U.S. 280, 285-86 (2003). Congress did not intend to prohibit intrafirm communications about debts and it did not need to state as much expressly: the backdrop of common law agency principles already did so.

Common law agency principles are not limited to employers and employees. They extend to all principals and agents, even outside the employment context. Restatement (Third) of Agency [the "Restatement"] § 1.01, cmt. c (2006) (describing a variety of scenarios outside the employment context in which an agency relationship arises).

5

Those common law principles supply key context here. A "principal's agent or employee, who acts for or on behalf of the principal, is a 'party' to that principal's contractual and business relations and not a third party thereto." *Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381, 1388 (Ala. 1986). In fact, an agency relationship "always contemplates three parties—the principal, the agent, and the third party with whom the agent is to deal." Restatement § 1.01 cmt. c. Under these principles, the transmission from a principal (a debt collector) to its agent (its vendor) is not a transmission to a "third party" at all, but rather to a "'party' to [the debt collector's] business relations and not a third party thereto." *Harrell*, *supra*.

Thus, for instance, courts frequently recognize that furnishing information to a letter vendor is not a "publication" sufficient to bring a libel claim. *See, e.g.*, *Mack v. Delta Air Lines*, 639 Fed. Appx. 582, 586 (11th Cir. 2016) (unpublished) ("communication to a third-party printer" not "'publication' for purposes of stating libel claim under Georgia law" because "no publication arises from communication to a 'business associate in the ordinary and natural course of business'"), cited favorably in *TransUnion LLC v. Ramirez*, --- U.S. ---, 141 S.Ct. 2190, 2210 n.6 (2021) for the proposition that "disclosures to printing vendors" typically have not been considered actionable under the common law.

The FDCPA does not abrogate these principles. Indeed, federal courts have "relied on traditional agency principles" to interpret the FDCPA. *Barbato v. Greystone All., LLC*, 916 F.3d 260, 269 (3d Cir. 2019). Those principles compel that a vendor is not a "third party" at all.

### 3) Special considerations for medical debt.

The FDCPA's text and legislative history support that not all transmissions of information about a debt are "communications." Further, there is reason to conclude—and courts have concluded, as discussed below—that the FDCPA includes implicit exceptions from its application. Medical debt raises special issues showing the *Hunstein* construction of § 1692c(b) is incorrect.

*First*, medical providers and their vendors (including their debt collectors) work in a regulated environment structured to balance opposing goals of consumer privacy and facilitation of communication among industry participants. For instance, the HIPAA Privacy Rule:

> allows covered providers and health plans to disclose protected health information [including about debts] to [their] 'business associates' [like debt collectors] if the providers or plans obtain satisfactory assurances that the business associate will use the information only for the purposes for which it was engaged by the covered

6

entity, will safeguard the information from misuse, and will help the covered entity comply with some of the covered entity's duties under the Privacy Rule.[3]

Consequently, the contracts used by covered entities and their business associates or between the business associate (like a collection agency) and its vendors (like the Letter Vendor or vendors providing scrubbing services) contain language laid out by the U.S. Department of Health and Human Services to ensure the protection of patient information.[4]

The *Hunstein* construction of § 1692c(b), as applied to medical debts would disrupt the careful balance stricken by other law. It cannot and should not be construed so broadly, particularly since it is older than the law it would disrupt. *See, e.g., ICC v. Southern Ry. Co.*, 543 F.2d 534, 539 (5th Cir. 1976) ("Under the usual rules of statutory construction, where there is a conflict between an earlier statute and a subsequent enactment, the subsequent enactment governs").

*Second*, it often is the case with medical debts that others—not the consumer—also are liable or may agree to become liable for payment of the debt. Examples include insurers, government programs, or charity programs. While consumers often give their medical providers permission to communicate with insurers, for example, such consent is not given directly to the debt collector as would be required for the § 1692c(b) prohibition not to apply. Thus, the *Hunstein* construction of § 1692c(b) would require consumers to receive collection correspondence—at least for the purpose of securing consent—even when consumers would prefer the matter be worked out without their involvement. Reading § 1692c(b) to prohibit debt collectors from communicating with third-party payors, as *Hunstein* appears to do, would harm consumers.

*Third*, the *Hunstein* construction of § 1692c(b), as applied to medical debts, will increase costs to taxpayers with no corresponding benefit to consumers. Medical providers who provide services at an economic loss under programs like Medicare, Medicaid, and the Children's Health Insurance Program are entitled to partial reimbursement or recoupment from the Centers for Medicare & Medicaid Services ("CMS," a division of HHS).

---

[3]  U.S. Dept. of Health & Human Services, *Business Associates*, available at https://www.hhs.gov/guidance/document/bas (citing 45 C.F.R. §§ 164.502(e), 164.504(e), and 164.532(d) and (e).

[4]    https://www.hhs.gov/hipaa/for-professionals/covered-entities/sample-business-associate-agreement-provisions/index.html (*see, in particular*, subsection (f) of **Permitted Uses and Disclosures by Business Associate**).

As *Hunstein* acknowledges, the probable result of its holding will be to drive up collection costs. As a natural consequence, medical facilities and their collectors likely will reduce their collection efforts and collect less debt. That comes at a cost to taxpayers: CMS is obligated to reimburse medical facilities at $0.65 on the dollar for uncollected amounts. There is nothing in the FDCPA or otherwise requiring that burden to be placed on the taxpayers.

In summation, the *Hunstein* construction of § 1692c(b) works particular hardship in the context of medical debts. It conflicts with other law, harms consumers, and harms taxpayers.

#### 4)  Conclusion regarding statutory interpretation.

Neither the text of the FDCPA nor its legislative history supports that sending information to a letter vendor is a "communication." *Hunstein* never held otherwise. Because it is not, Medicredit's alleged transmission of information to the Letter Vendor was lawful.

### 2.      Regulatory opinions and actions support that the FDCPA does not forbid the transmission of information to the Letter Vendor.

Regulators agree Medicredit acted lawfully and their conclusions warrant deference under *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

Initially, the Federal Trade Commission ("FTC") was tasked with enforcing and interpreting the FDCPA, and its interpretations of the law are entitled to "considerable weight." *Leonard v. Zwicker & Assocs., PC*, 713 Fed. Appx. 879, 883 (11th Cir. 2017) (unpublished). In 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376-2223 (2010). *See* S. Rep. No. 111-76 at 2 (2010). Under Dodd-Frank, as codified at 12 U.S.C. § 5512, the CFPB has authority to "administer, enforce, and otherwise implement the provisions of Federal consumer financial law," expressly including the FDCPA. Dodd-Frank also allows the CFPB to "prescribe rules with respect to the collection of debts by debt collectors, as defined in [the FDCPA]." 15 U.S.C. § 1692*l*(d).

The FTC and CFPB have delivered an unbroken line of authority confirming the FDCPA permits use of vendors. In 1988, the FTC issued its *Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act* (the "FTC Commentary"), 53 FR 50097. There, the FTC clarified that the term "communicate" is "given its ordinary meaning" so that it "applies to contacts *with the consumer* related to the collection of debt, whether or not the debt is specifically mentioned." *Id.* at 50103 (emphasis added). The FTC also confirmed that a

8

"debt collector may contact an employee of a telephone or telegraph company in order to contact the consumer, without violating the prohibition on communications to third parties, if the only information is that necessary to transmit the message to, or make contact with, the consumer." *Id.* at 50104. As noted *supra*, transmitting a message to a consumer by telegraph necessarily meant providing the information for the message to the telegraph operator.

In 1992, the FTC opined that a debt collector may use a third party to translate collection notices because the conveyance of information there is an "incidental contact," rather than a communication with a third party.[5] Such "incidental contact" requires the transmission of information about the debt to a person—the translator—but it is not a communication.

More recently, the CFPB adopted a comprehensive set of FDCPA regulations referred to as Regulation F. Regulation F shows that use of vendors is lawful.

The rulemaking process that culminated in Regulation F began in November 2013. 85 FR 76734, 76738 (Nov. 30, 2020). The CFPB undertook "a variety of consumer testing and surveys, beginning in 2014," including a nationwide survey of consumers' experiences with debt collection. *Id.* The CFPB also surveyed debt collection firms and vendors and published a study in July 2016 called the CFPB Debt Collection Operations Study (the "Operations Study").[6] The Operations Study included interviews with vendors, including specifically "vendors providing *print mail services*, predictive dialers, voice analytics, payment processing, and *data services*." Operations Study, p. 8 (emphasis added). The Operations Study showed that many debt collectors do not host collection data themselves, but instead pay a vendor "a monthly fee for access to a platform hosted by the vendor, *with account data residing on the vendor's servers*." *Id.* at p. 24 (emphasis added). As to letter vendors, 50 out of 58 of the debt collectors surveyed use them.

The CFPB commented in Regulation F that over 85% of debt collectors use a mail vendor. 86 FR 5766, 5845 n.446. Rather than express concern about it, Regulation F permits *and anticipates* the use of letter vendors. It allows debt collectors to include the letter vendor's return mail address on collection letters for returned mail, disputes and payments. *Id.* at 5817 ("some debt collectors use vendors to receive and process mail from consumers . . . . The Bureau is finalizing

---

[5] FTC Opinion Letter to Zbrzeznj (Sep. 21, 1992), *available at*: http://www.cardreport.com/laws/fdcpa/ftc-opinion/zbrzeznj.html.
[6] https://files.consumerfinance.gov/f/documents/20160727_cfpb_Third_Party_Debt_Collection_Operations_Study.pdf.

SL 5054470.5

§ 1006.34(c)(4)(iii) with a clarifying revision that addresses the commenter's request regarding letter vendor mailing addresses") and 5859 (a "debt collector may disclose a vendor's mailing address, if that is an address at which the debt collector accepts disputes and requests for original-creditor information"). The CFPB also expected the cost to comply with certain provisions of Regulation F governing validation notices to be "relatively small" because "most vendors will provide an updated notice at no additional cost." *Id.* at 5845. Conversely, the CFPB never expressed concern about use of vendors.

Nor is the CFPB's determination on that score limited only to letter vendors. As noted, the CFPB was aware of debt collectors' use of other types of vendors, including email, text message and ringless voicemail providers (discussed *supra*) and data service companies. Particularly germane here is the CFPB's recognition that debt collectors use different vendors to make calls and deliver ringless voicemails to consumers. 85 FR 76738, 76802 (Nov. 30, 2020). While the CFPB required such contacts to be counted in determining compliance with a safe harbor for call frequencies, the CFPB never suggested that the use of vendors to do those things is prohibited. *Id.*

Likewise, the CFPB's Debt Collection Supervision and Examination Manual covers what the CFPB considers when evaluating a debt collector's compliance with the FDCPA. Among the considerations are "whether the entity uses any service providers in conducting its debt collection" and if so, whether the debt collector takes appropriate steps to ensure the service provider's compliance with applicable laws. Absent from the Manual is a statement that the transmission of information about debts to a service provider violates the FDCPA.[7]

In short, neither the FTC nor the CFPB gives any inkling that the sending information about debts to service providers is unlawful. Rather, both have indicated the opposite is true.

The FTC and CFPB's constructions of the FDCPA are entitled to deference under *Chevron* and *Skidmore*. Under *Chevron*, a regulation promulgated in the exercise of delegated authority generally is binding in the courts. *United States v. Mead Corp.*, 553 U.S. 218, 226-27 (2001).[8] Under *Skidmore*, the experience and broader investigations and information available to an agency

---

[7] CFPB Debt Collection Supervision and Examination Manual, Debt Collection, Module 1. Available at https://files.consumerfinance.gov/f/documents/cfpb_supervision-and-examination-manual.pdf.     (The referenced material is at pp. 299-300 of the linked document; the document itself does not include page numbers).

[8] While Regulation F has been finalized and published, it is not currently scheduled to become effective until November of this year Accordingly, Medicredit submits only that the Court need only defer to CFPB's judgment in enacting Regulation F, not that the Court is bound to apply Regulation F.

SL 5054470.5

and the value of uniformity in the application of a national law may merit deference by the courts, "whatever its form." *Id.* at 234. Indeed, the Eleventh Circuit holds that deference to the FTC's interpretation of the FDCPA is appropriate, and would conclude the same about the CFPB's interpretations. *Acosta*, 309 Fed. Appx. at 320.

The FTC and CFPB hold that sending information about a debt to a vendor is lawful. This Court should follow the reasoned judgment of those agencies and hold the same.

### 3.     Judicial authorities support that the FDCPA permits use of vendors.

Judicial authorities also show that Medicredit acted lawfully. Medicredit begins with the Supreme Court and works its way down from there.

In *Heintz v. Jenkins*, the Court considered whether § 1692c(c) prohibits a debt collector from commencing a lawsuit against a consumer after the consumer instructs the debt collector to stop communicating with her. 514 U.S. 291, 296 (1995). The Court acknowledged that, while § 1692c(c) permits certain communications following a request to stop communications, a lawsuit is not among them. *Id.* Rather than holding this omission implied that the FDCPA exempts attorneys from its application, the Court held § 1692c(c) contains an "implicit" exception for communications initiating a lawsuit. Although § 1692c(c) includes no textual indicia that its enumerated exceptions are non-exclusive—e.g. "including" or "including but not limited to"—the Court found an implied exception. *See also*, *Pearce v. Rapid Check Collection, Inc.*, 738 F. Supp. 334, 337 (D. S.D. 1990) (debt collector's communication to bank at which consumer bounced checks not an impermissible third party contact because there was no chance the communication was used to embarrass the plaintiff or that it would cause loss of privacy or employment).

The same flexibility may be applied to other parts of the statute. One obvious place to apply it is in the definition of "communication" in § 1692a(2), as the FTC and CFPB have done. That is, sending information to people acting as a "medium" rather than a recipient of the information should not be considered a "communication" at all. Another obvious place would be in § 1692c(b) itself (though *Hunstein* concluded § 1692c(b) admits of no exceptions).

Indeed, § 1692c(b) *must* include some implicit exceptions. Per *Heintz*, the FDCPA has an "apparent objective of preserving creditors' judicial remedies." 514 U.S. at 296. But if § 1692c(b) includes no implicit exceptions, litigation would be impossible. An action on debt must identify the debtor and the amount owed. It must be delivered to the defendant by a process server (or perhaps by publication or posting). The judge and court staff must see the allegations. In most

11

jurisdictions, if not all of them, the allegations will be available for public viewing. But none of those people—the process server, the judge, the court staff, or the public—are expressly excepted from § 1692c(b). Thus, if *Hunstein* is correct, § 1692c(b) thwarts what the Supreme Court holds is an "objective" of the FDCPA—namely, "preserving creditors' judicial remedies." This cannot be. *See also*, *Tardi-Osterhoudt v. McCabe, Weisburg & Conway LLC*, 2019 WL 4242410 *6 (N.D.N.Y. Sep. 6, 2019) (no § 1692c(b) violation for recording assignment of mortgage);  *Cohen v. Wolpoff & Abramson, LLP*, 2008 WL 4513569 *6 (D. N.J. Oct. 2, 2008) ("no cause of action under [§ 1692c(b)] for an attorney's communication with a forum in pursuit of a legal remedy.")

The Supreme Court also addressed § 1692c in *Obduskey v. McCarthy & Holthus LLP*, --- U.S. ---, 139 S.Ct. 1029 (2019). There, the plaintiff claimed the defendant violated § 1692c(b) by posting a notice of a non-judicial foreclosure sale in accordance with state law. *Id.* at 1034-35. The Court held those who engage in only non-judicial foreclosure proceedings are not debt collectors, *id.* at 1038, and its reasoning is illuminating here. The Court found that to hold otherwise may not do "great harm to either the [FDCPA] or state foreclosure schemes," but, characterizing *Heintz* as holding that "the FDCPA's protections may contain certain implicit exceptions" (alterations omitted), the Court decided to avoid the possibility of such harm by construing "debt collector" to exclude those who engage only in non-judicial foreclosures. *Id.* at 1037-38. Again, the same may be done here: either the term "communication" excludes sending information to vendors or § 1692c(b) excludes transmission of information to vendors.

In *White v. Goodman*, 200 F.3d 1016, the Seventh Circuit found that back-office service providers are excluded from the scope of the FDCPA: "The Fair Debt Collection Practices Act is not aimed at . . . companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters." *Id.* at 1019 and cases cited therein. True, the decision was that such vendors are not debt collectors under the statute, but the reasoning is instructive: such vendors are not debt collectors because they are conduits of collection activity—they perform "ministerial duties," much like a telegram company or an email service provider would. As such, they are not recipients of a information, but the "medium" of conveyance. 15 U.S.C. § 1692a(2).[9]

---

[9] Had the *Hunstein* panel concluded that the transmission of information from a debt collector to its letter vendor was a "communication"—which it did not because the parties stipulated to the issue—it would have created a circuit split with the Seventh Circuit. If such a transmission is a "communication" with the letter vendor rather than the consumer, it follows that the letter vendor's transmission of the letter to the consumer also is a "communication." If the letter vendor routinely communicates with consumers through the mails

12

Also helpful is *Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034 (S.D. Ohio 1997). There, the defendant printed and mailed to the plaintiff an unpaid account notice. *Id.* at 1041. Although the letter was in fact printed and mailed by the defendant, it showed that it was sent by the plaintiff's original creditor (and the evidence showed that the defendant was, in fact, a letter vendor for the original creditor). *Id.* Unable to sue his creditor because the FDCPA does not cover original creditors, the plaintiff instead sued the letter vendor. *Id.* The Court concluded the letter was not a communication from a debt collector because the creditor controlled the content of the letter and "used the Defendant as merely a mailing service and not a collection service." *Id.* In fact, the Court noted that its finding was based on the definition of "communication," which specifies a "communication" may be sent "indirectly." *Id.* at 1041 n.5. In short, the Court correctly found that while there was a "communication," it was a communication from the creditor to the consumer.

Finally, there is the decision by the Colorado Supreme Court in which the Court held that Colorado's state law analogue to section 1692c(b) did not prohibit the use of service providers. *Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769 (Colo. 2008). That Court observed that the Colorado law at issue was "nearly identical" to § 1692c(b). *Id.* at 777. The Court found § 1692c(b)'s purpose was to "protect a consumer's reputation and privacy, as well as to prevent loss of jobs resulting from a debt collector's communication with a consumer's employer concerning the collection of a debt." The Court considered the transmission of information to the vendor a "*de minimis* communication" that "cannot reasonably be perceived as a threat to the consumer's privacy or reputation." *Id.*, citing the FTC's Staff Commentary on "incidental contacts," *supra*.

These authorities show that sending information to a vendor is not a "communication" to the vendor. The FDCPA is more flexible than that.

### 4. The presumption against unconstitutional construction of statutes does not permit a construction of § 1692c(b) that prohibits a debt collector from providing information to its vendors.

Courts "should . . . construe statutes to avoid not only the conclusion that they are unconstitutional, but also grave doubts upon that score." *United States v. Palomar-Santiago*, --- U.S. ---, 141 S.Ct. 1615, 1621 (2021) (internal quotations and alterations omitted). Where, as here,

---

in an attempt to collect debts owed another, it rather plainly would be a debt collector covered by the FDCPA, contrary to the clear and correct holding in *White*. 15 U.S.C. § 1692a(6).

the statutory language of the FDCPA is ambiguous, the canon of constitutional avoidance holds that the FDCPA must be given a constitutional construction. *Id.*; *see also*, *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001) (if a construction one construction of a statute "would raise serious constitutional problems" but another "fairly possible" interpretation of the statute exists, courts "are *obligated* to construe the statute to avoid such problems") (emphasis added).

Strict construction of § 1692c(b) would violate the Free Speech and the Petition Clauses of the First Amendment to the Constitution of the United States. This outcome must be avoided by holding a debt collector may communicate with vendors. *Hunstein* did not address this issue.

While this section of the Memorandum explains why the constitutionality of § 1692c(b) is important as a matter of construction, it also is a challenge to the constitutionality to § 1692c(b). If the Court follows *Hunstein*, § 1692c(b) is unconstitutional and Medicredit is entitled to dismissal on that alternative basis. *Collins v. Yellen*, --- U.S. ---, 141 S.Ct. 1761, 1788-89 (2021) ("an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment).").

### a.      The Free Speech Clause.

The Free Speech Clause of the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech[.]" The scrutiny a court applies to determine if a law violates the Free Speech Clause depends on the restriction: content-based restrictions are analyzed under "strict scrutiny," while content-neutral restrictions on commercial speech are analyzed under "intermediate scrutiny." *See Barr v. Am. Assn. of Political Consultants*, --- U.S. ---, 140 S.Ct. 2335, 2346 (2020). Here, strict scrutiny applies and § 1692c(b) fails to survive it, but § 1692c(b) would fail intermediate scrutiny too.

### i.      § 1692c(b) is a content-based restriction subject to strict scrutiny.

§ 1692c(b) is a content-based restriction subject to strict scrutiny. In *Barr*, the Court considered a federal law that "generally bar[red] robocalls to cell phones." 140 S.Ct. at 2346. The law contained an exception, however, permitting "robocalls to collect government debt." *Id.* The Court concluded that the robocall ban, paired with the government-debt exception, was a content-based restriction on speech. *Id.* "A law is content-based if a regulation of speech on its face draws distinctions based on the message a speaker conveys," including "a law that singles out specific

14

subject matter for differential treatment." *Id.* (internal quotations omitted). The Court held the law under consideration was a content-based restriction because while "a robocall that says, 'Please pay your government debt' is legal," a "robocall that says 'Please donate to our political campaign' is illegal." *Id.* "That is about as content-based as it gets." *Id.*

A strict construction of § 1692c(b) raises the same problem. Under such a construction, a debt collector could discuss the weather, sports, contracts, the regulatory environment. But once the conversation turns to debts, it becomes unlawful. "That is about as content-based as it gets."

*Barr* declined to consider whether its holding would reach debt collection statutes like the FDCPA. *Id.* at 2347. But it did recognize its holding did not undermine the government's "traditional or ordinary economic regulation of commercial activity that imposes *incidental burdens on speech.*" *Id.* (emphasis added). Key there is the phrase "incidental burdens on speech." § 1692c(b), strictly construed, is no "incidental burden[] on speech." As recognized in *Hunstein*, a strict construction of § 1692c(b) will upend the industry. Thus, the statute cannot be spared from strict scrutiny as an "incidental burden[] on speech."

The Eleventh Circuit recently reached a similar conclusion, holding that a content-based restriction on commercial speech was subject to strict scrutiny. *Otto v. City of Boca Raton*, 981 F.3d 854, 861-62, 872 (11th Cir. 2020). The Court held that a "reliable way to tell if a law restricting speech is content-based is to ask whether enforcement authorities must examine the content of the message that is conveyed to know whether the law has been violated." *Id.* at 182 (internal quotations omitted). That is the case with a strict construction of § 1692c(b): only by considering the content of a discussion could an authority determine if § 1692c(b) was violated.[10]

Thus, § 1692c(b), strictly construed, is a content-based restriction subject to strict scrutiny.

### ii.    § 1692c(b) does not survive strict scrutiny.

The *Hunstein* construction of § 1692c(b) fails strict scrutiny. A law survives strict scrutiny if it "promote[s] a compelling government interest" using the "least restrictive means [available] to further that interest." *Sable Communications of Cal., v. FCC*, 429 U.S. 115, 126 (1989).

As explained in section II.B.1, *supra*, Congress' interest in enacting § 1692c(b) was to guard against "abusive," "deceptive," and "unfair" speech about a debt, including by prohibiting

---

[10] And notably, as discussed above, the relevant enforcement authorities do not examine whether debt collectors disclose information about debts or debtors to their vendors. Rather, the enforcement authorities recognize that debt collectors lawfully do so.

SL 5054470.5

contacts with "third persons such as a consumer's friends, neighbors, relatives or employer" because such "contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." 15 U.S.C. § 1692; 1977 U.S. Code Congr. & Admin. News 1695, 1699. Medicredit acknowledges Congress' interest in prohibiting "serious invasions of privacy" through communications about a debt meant to embarrass or shame a consumer into payment. But prohibiting sharing information with vendors—who, as acknowledged in *Hunstein*, are unlikely to care about or abuse the information—does not further that interest nor is it the "least restrictive means [available] to" do so. *Sable*, 429 U.S. at 126. § 1692c(b) fails strict scrutiny.

   **iii. Even if § 1692c(b) was subject to intermediate scrutiny, it fails that test as well.**

  As construed in *Hunstein*, § 1692c(b) also would fail intermediate scrutiny. A law survives intermediate scrutiny if it advances a substantial government interest and is no more extensive than necessary to serve that interest. *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 564 (1980). The standard is not satisfied if there are "numerous and obvious less-burdensome alternatives." *Forida Bar v. Went for It, Inc.*, 515 U.S. 618, 633 (1995).

  As noted, Medicredit agrees that prohibiting "substantial invasions of privacy" meant to shame or embarrass consumers into paying their debts is a substantial government interest. But, there exist "numerous and obvious less-burdensome alternatives" to further that interest. One is limiting the prohibition on third-party communications to those likely to care about the information received or to take adverse action based on it. Another would be imposing safeguards on the use of the information and the manner it is sent to ensure it is not intercepted or used improperly.

  Because there are numerous and obvious alternatives to promote the government's interest in prohibiting "serious invasions of privacy," § 1692c(b) fails intermediate scrutiny.

   **b. The Petition Clause.**

  Strict construction of § 1692c(b) also implicates the Petition Clause, which provides that "Congress shall make no law . . . abridging . . . the right of the people. . . to petition the Government for redress of grievances." The *Noerr-Pennington* doctrine is the way the Petition usually is raised in federal court. "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DirecTV*, 437 F.3d 923, 929 (9th Cir. 2006). This immunity covers pleadings, other litigation filings, and other "conduct incidental to the prosecution of the suit." *Columbia Pictures*

16

*Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd* 508 U.S. 49 (1993). The doctrine creates a rule of construction "applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause" so that courts must construe statutes in a manner to avoid burdening conduct that implicates the Clause's protections unless the statute clearly provides otherwise. *Sosa*, 437 F.3d at 931.

As discussed, a strict construction of § 1692c(b) would eliminate a debt collector's ability to sue on debt, contrary to the FDCPA's apparent purposes of preserving creditors' judicial remedies. *Heintz*, 514 U.S. at 296. The commencement and prosecution of an action on debt requires the disclosure of information about the debt to people not enumerated in § 1692c(b). If such disclosure violates § 1692c(b), any debt collector who sues on a debt acts unlawfully.

Medicredit is mindful that allowing debt collectors blanket FDCPA immunity under *Noerr-Pennington* would undermine swathes of the FDCPA. Medicredit does not ask that the Court go so far, nor does *Noerr-Pennington* so require. But *Noerr-Pennington* absolutely requires that the FDCPA not be construed to foreclose debt collectors from suing on debt. Unfortunately, though, that is precisely the result that would obtain under the *Hunstein* panel's strict construction.

### 5.    Conclusion

A debt collector may lawfully send information to its vendors. This conclusion is amply supported by the text of the statute, its legislative history, an unbroken line of regulatory authorities, various judicial authorities, and application of the constitutional avoidance canon. Should the Court disagree, Medicredit submits that § 1692c(b) is unconstitutional. For either or both of these reasons, the Complaint is due to be dismissed for failure to state a claim.

### C.    The Complaint fails to allege a communication to a prohibited third party "in connection with the collection of any debt."

So far, this memorandum has focused on whether Medicredit's alleged transmission of information to vendors is a "communication" to the vendor. It is not. Even if it was, however, it was not a communication "in connection with the collection of any debt."

The discussion in part B of this memorandum, *supra*, applies with equal force here and is incorporated by reference. The FDCPA and other applicable authorities show that the FDCPA must be interpreted in a flexible manner to permit a debt collector to transmit information to its vendors. If that flexibility is not to be found in the definition of "communication" it may instead be found in the construction of the term "in connection with the collection of any debt." Medicredit

17

acknowledges that such a construction is foreclosed by *Hunstein*. As explained above, *Hunstein* was wrongly decided and, in case of an adverse judgment, Medicredit intends to confirm on appeal that *Hunstein* was wrongly decided.

There is one additional argument that belongs only here, though. The Sixth and Seventh Circuits have articulated a different test for whether a communication is made "in connection with the collection of any debt" than that adopted in *Hunstein*. In those courts, a communication meets the standard only if "an animating purpose of the communication [is] to induce payment by the debtor." *Gruden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011); *Gburek v. Litton Loan Serv. LP*, 614  F.3d 380, 385 (7th Cir. 2010).

The standard applied by the Sixth and Seventh Circuits is consistent with FTC guidance. For instance, the FTC determined that a debt collector may, without violating the FDCPA, "communicate with the Better Business Bureau, at the Bureau's request, about a consumer complaint against the collector."[11] The Court reasoned that such a communication is not made "with a view toward collecting a debt." Instead, "[r]esolving a complaint appears to be the primary purpose of the contact." Like the Sixth and Seventh Circuits, the FTC recognizes that whether a communication is made "in connection with the collection of any debt" hinges on its "primary purpose." This contrasts with the *Hunstein* holding that a "loose" link with collection suffices.

While *Hunstein* currently prohibits this Court from agreeing to that standard, Medicredit preserves the issue for appeal. Medicredit submits that this standard is more appropriate for determining whether a "communication" violates § 1692c(b) and sending information to a vendor does not cross the line. Indeed, in this case, Plaintiff complains that Medicredit sent information about his debt to "scrubbing" services. As discussed below, the purpose of transmitting information to such vendors is not to induce payment but to guard inadvertent violation of the law.

D.      **As to the transmission of information to the "skip trace" agency, the Complaint fails to allege unlawful communication in connection with the collection of a debt.**

While much of the discussion so far has applied to all vendors, or with special force to Letter Vendors, the allegation that Medicredit transmitted information about Plaintiff or his debt

---

[11] FTC Opinion Letter to Jones (Dec. 30, 1992), *available at*: http://www.cardreport.com/laws/fdcpa/ftc-opinion/jones.html.

SL 5054470.5

to a "skip trace" agency warrants additional discussion. Whether the transmission of such information otherwise would be prohibited, it was a lawful attempt to obtain location information.

"A 'skip tracing' agency is defined as a 'service that locates persons (such as delinquent debtors) . . ." *Ponce v. BCA Fin. Servs., Inc.*, 2011 WL 13175624 *8 n.12 (S.D. Fla. May 25, 2011), quoting Black's Law Dictionary, 952 (8th ed. 2004). The purpose of a skip tracing agency, put in FDCPA terms, is to acquire location information.

§ 1692c(b) is expressly made subject to § 1692b. § 1692b governs debt collectors' communications "with any person other than the consumer for the purpose of acquiring location information about the consumer." It imposes requirements on such communications, numbered (1) through (6), none of which is implicated here.

The Complaint in no manner implicates requirement (1) or requirements (3) through (6); the Complaint does not allege any facts supporting a violation of those requirements. Only (2) potentially is implicated. (2) prohibits a debt collector, when seeking location information, from stating that the consumer "owes any debt." Plaintiff does not allege Medicredit told the skip tracing agency Plaintiff owed a debt.

Thus, to the extent Plaintiff's FDCPA count rests on disclosure to a skip tracing agency, it fails to state a claim.

###  E.  The alleged transmissions of information to "scrubbing" agencies is lawful.

Plaintiff also alleges Medicredit sent information about his debt to "bankruptcy, SCRA, probate, and other 'scrubbing' services." (DE 4-2, ¶ 25). As explained, sending information to such vendors is lawful. Medicredit addresses this allegation separately, however, because holding that the use of scrubbing services is unlawful would be harmful to consumers, create an unwelcome and unnecessary conflict within the FDCPA, and increase the likelihood that debt collectors inadvertently would violate other law.

"Scrubbing" an account refers to a process that ensures available contact information is correct and that there are no legal bars to proceeding with collection. *See, e.g.*, *Abdollahzadeh v. Mandarich Law Group, LLP*, 922 F.3d 810, 818 (7th Cir. 2019) (discussing "scrub" to cull time-barred debts); *Novak v. Monarch Recovery Mgmt.*, 235 F. Supp. 3d 1039, 1042 (N.D. Ill. 2016) (discussing use of "outside bankruptcy 'scrub' service" used to check "new placements . . . for bankruptcy" before collection begins).

Scrubbing helps consumers. For instance, the scrubbing procedure in *Abdollzhzadeh* was key to determining that the defendant debt collector kept procedures reasonably adapted to avoid inadvertent errors such that the debt collector was excepted from liability under the *bona fide* error defense in § 1692k(c). 992 F.3d at 818. In *Gray v. LVNV Funding, LLC (In re Gray)*, the defendant debt collector's bankruptcy scrubbing procedures were similarly integral to avoiding liability for violation of the automatic stay under § 362(a) of the Bankruptcy Code. 2013 WL 2903455 *4 (Bankr. M.D. Ala. Jun. 14, 2013). Likewise in *Lawson v. I.C. System, Inc.*, the defendant debt collector's use of an outside bankruptcy-scrubbing service was important to its establishment on summary judgment of its *bona fide* error defense under the FDCPA. 2019 WL 2501916 **2, 8 (N.D. Ala. Jun. 17, 2019).

Thus, Plaintiff's effort to hold Medicredit liable for using scrubbing services suffers three problems.

**First**, account scrubbing helps consumers by minimizing the risk of unlawful collection activity, as explained above. Because scrubbing helps consumers, the FDCPA should not be construed to prohibit it. *See Obduskey*, 139 S.Ct. at 1037 (declining construction of FDCPA that "would hardly benefit debtors").

**Second**, holding that scrubbing is unlawful would create an unworkable tension between § 1692c(b) and § 1692k(2), which empowers debt collectors to use procedures to guard against *bona fide* errors. As shown in the cases cited above—among others—using scrubbing services often is key to showing § 1692k(2) applies and is not only permissible but encouraged. Plaintiff's proposed construction of § 1692c(b) would bar debt collectors from guarding effectively against violations.

A prohibition on probate scrubbing services also would raise the prospect of additional violations of other provisions of the FDCPA. The question of how to collect decedent debt—and, importantly, to whom to send collection notices so not to violate §§ 1692c(b) and 1692g—was so vexing that the CFPB dedicated four pages of commentary to it when it promulgated Regulation F. 86 FR 5766, 5772-75 (Jan. 19, 2021). What the CFPB ultimately decided is that if a debt collector knows or should know a consumer is dead and the debt collector has not previously provided validation information to the consumer, the "debt collector must provide the validation information to an individual *that the debt collector identifies by name* who is authorized to act on behalf of the deceased consumer's estate." *Id.* at 5858 (emphasis added). Prohibiting the use of probate scrubbing services invites two obvious compliance problems: (1) whether the debt

20

collector "should have known" the consumer is dead and (2) if so, whether the debt collector can identify by name someone who is authorized to act on behalf of the dead consumer's estate.

The use of scrubbing services is key to maintaining procedures reasonably calculated to guard against inadvertent *bona fide* errors. Holding that § 1692c(b) prohibits the use of such services would create an unwelcome and unnecessary tension between § 1692c(b) and § 1692k(2).

**Third**, holding that § 1692c(b) prohibits scrubbing services also makes it more likely that debt collectors inadvertently will violate *other* laws.[12] For instance, § 362(a) of the Bankruptcy Code generally prohibits creditors from collecting or attempting to collect pre-petition debts, and § 524(a)(2) of the Bankruptcy Code provides that the entry of an order of discharge "operates as an injunction against . . . an act, to collect, recover or offset" discharged debts. If § 1692c(b) prohibits bankruptcy scrubbing, the chance of violations of the automatic stay and discharge injunction increases to the detriment of consumers and debt collectors alike.

Likewise, the Servicemembers Civil Relief Act (the "SCRA," 50 U.S.C. § 3901, *et seq.*) grants protections to servicemembers. For instance, the SCRA limits to six percent the interest due on debts incurred by servicemembers. 50 U.S.C. § 3937(a). Debt collectors often will have no feasible way to know if a consumer is a servicemember without an SCRA scrubbing service and thus may violate the SCRA by, for instance, charging a higher interest rate than permitted.[13]

In summation, reading § 1692c(b) to prohibit scrubbing services would be harmful to consumers, conflict with other provisions of the FDCPA, and increase the likelihood that debt collectors inadvertently violate other laws. § 1692c(b) does not compel such a construction, nor would such a construction advance consumer interests or the legislative intent behind § 1692c(b).

F.    **There is no claim stated based on Medicredit's alleged use of other "independent third-party contractors" or transmission of information to unidentified "others."**

Plaintiff complains also that Medicredit sent information about his debt to other "independent third-party contractors" and, through those unspecified "independent third-party

---

[12] And, the violation of those other laws may in turn create a violation of the FDCPA's prohibition on misrepresenting the character, amount or legal status of a debt. 15 U.S.C. § 1692e(2).

[13] The Department of Defense maintains a website through which inquiries may be made about a person's status as a servicemember, https://scra.dmdc.osd.mil/scra/#/single-record. Of course, under the strict *Hunstein* construction of § 1692c(b), it is not clear why using that website to query a person's status as a servicemember would be any more or less permissible than using a vendor to do the same faster and more efficiently: the same information is transmitted either way.

SL 5054470.5

contractors" and the skip tracing and scrubbing services, onward to unspecified "others." (DE 4-2, ¶ 25).

Plaintiff alleges no facts to support this aspect of his Complaint. He does not state, for instance, that the communication of information to "others" was not for the purpose of acquiring location information in accordance with § 1692b. He does not identify who those "others" are. He does not specify any basis for his belief that Medicredit, through its alleged contractors and skip tracing and scrubbing services, sent information to "others."

In short, Plaintiff alleges that § 1692c(b) prohibits certain communications and that Medicredit made certain unspecified disclosures to unidentified people for an unspecified purpose at an unspecified time, all without further factual adornment. Even assuming the underlying theory is actionable—and as explained above it is not—"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff falls far short here.

*   *   *

Plaintiff's Complaint rests on the misguided notion that a debt collector may not use any third parties to assist in the collection of a debt without violating § 1692c(b). That notion is wrong. Medicredit did not "communicate" with its vendors and, even if it did, same was not "in connection with the collection of any debt." To hold otherwise would be contrary to the text of the FDCPA, its legislative history, applicable regulatory and judicial authorities, and the constitutional avoidance canon. The sole authority arguably supporting Plaintiff's theory of liability, *Hunstein*, was wrongly decided, did not address and did not purport to address all the issues raised here, and in any event likely will soon be vacated. What is more, Plaintiff's construction of § 1692c(b) would render the statute unconstitutional, would harm consumers, would create a conflict with section 1692k(2), and would inevitably lead to an increase in inadvertent violations of other law.

Medicredit respectfully requests that the Court enter an order dismissing with prejudice Plaintiff's count alleging a violation of the FDCPA.

## III.     The Complaint does not state a claim under the FCCPA.

Plaintiff also alleges that Medicredit's alleged transmission of information to the "Third-Party" (that is, the Letter Vendor) violates Fla. Stat. Ann. § 559.72(5), which prohibits, in collecting consumer debts, any person from "[d]isclos[ing] to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for creditworthiness,

22

with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false."

The Complaint does not allege that Medicredit transmitted any false information, so this memorandum focuses on whether Medicredit's vendors[14] had a "legitimate business need for the information" they received; whether the Plaintiff alleged facts to support the disclosure affected his reputation; and whether the Complaint adequately alleged Medicredit's "knowledge or reason to know" of the absence of a legitimate business need for the information.

*First*, Medicredit's vendors had a legitimate business need for the information. For instance, the Letter Vendor—as alleged—takes information furnished by Medicredit to generate and send collection letters. Without the information from Medicredit, the Letter Vendor cannot do its job. *See, e.g.*, *Ross v. Chisholm*, 2006 WL 8432290 *15 (S.D. Fla. Dec. 29, 2006) (no violation where lienholder disclosed information about debt to insurer of lienholder's collateral: insurer "had an obvious business need for the information provided to them, and [lineholder], as loss payee under the . . . policy, had an obvious and legitimate reason for communicating with [insurer] about these matters."). Likewise with the skip trace agency, the scrubbing vendors and Medicredit's other contractors: Plaintiff never alleges facts that Medicredit furnished to them information they did not legitimately need to perform their contracted tasks.

The absence of a "legitimate business need" is an essential element of Plaintiff's FCCPA count that must be supported by facts. *Heard v. Mathis*, 344 So.2d 651, 655 (Fla. 1977) (elements of action); *Smith v. Univ. Community Hosp., Inc.*, 2019 WL 118045 **7-8 (M.D. Fla. Jan. 7, 2019) (where hospital filed and publicly posted lien on medical bill, plaintiff failed to allege facts supporting that hospital knew others had no legitimate business need for the information). Here, Plaintiff has failed to supply those facts and instead has offered only an incorrect legal conclusion.

*Second*, Plaintiff has not alleged facts that the transmission of information affected his reputation. *See Heard*, 344 So.2d at 655 (elements of action include that "such information affected the debtor's reputation"); *see also Niven v. Natl. Action Fin. Servs., Inc.*, 2008 WL 4190961 *2 (M.D. Fla. Sep. 10, 2008) (disclosure of information about debt to third party without legitimate business interest did not entitle plaintiff to summary judgment without a showing that the

---

[14] As above, Medicredit addresses all of its alleged vendors out of abundance of caution, even though the allegations of the FCCPA count are confined to the transmission of information to the "Third-Party," the Letter Vendor.

SL 5054470.5

"disclosure affected Plaintiff's reputation for credit worthiness or otherwise"). He purports to explain that the transmission of information affected his reputation because "the Third-Party"— that is, the Letter Vendor—"did not have any *legitimate* need for unlawfully transmitted personal information of Plaintiff." (DE 4-2, ¶ 39) (emphasis in original). That legal conclusion is wrong, though, and he advances no facts to support that the information affected his reputation.

As explained, the Letter Vendor had a legitimate business need for the information. Nor is it correct to say the Letter Vendor lacked a legitimate business need for the information merely because the information was transmitted unlawfully. For one thing, it was not transmitted unlawfully. For another, the term "legitimate" modifies "business need," not the way the Letter Vendor obtained the information. Plaintiff thus has failed to allege key facts to support this claim.

*Third*, the FCCPA prohibits disclosures to those without a legitimate business need for the information only when the person transmitting the information knows or has reason to know that the recipient lacks a legitimate business need for the information. The Complaint omits to allege, even in conclusory terms, that Medicredit knew or should have known of such a non-existent fact and therefore fails to state a claim. *See Smith*, *supra*.

## IV. Certain of the Complaint's allegations are due to be stricken.

Paragraphs 16 and 17 of the Complaint allege that Medicredit maintains the records required by Rule 69V-180.080, Florida Administrative Code, and that the said records "are current to within one week of the current date."

The Rule requires registered consumer collection agencies to retain certain records. A copy of the Rule is available online through the Florida Department of State's website.[15] The records required do not include communications with anyone other than the debtor and the creditor.

At issue here is a single letter to the Plaintiff, a copy of which is attached to the Complaint. Plaintiff contends—wrongly—that Medicredit violated the FDCPA and FCCPA by transmitting information about him or his debt to others. The allegations contained in paragraphs 16 and 17 of the Complaint are immaterial to his entitlement to relief. Fed. R. Civ. P. 8(a) (complaint shall include a "short and plain statement of the claim showing the pleader is entitled to relief").

Fed. R. Civ. P. 12(f) provides that a court "may order stricken from any pleading . . . any . . . immaterial . . . matter." "The purpose of a motion to strike is to clean up the pleadings,

---

[15] https://www.flrules.org/gateway/notice_Files.asp?ID=10534799.

SL 5054470.5

remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017). While motions to strike are "disfavored," they still can serve important purposes. *Id.* Where, as here, the basis for a motion to strike is that the allegations are "immaterial," the question is whether the allegations have "value in developing the issues of the case." *Id.* at 700 n.4. Here, the allegations in paragraphs 16 and 17 have no such value. Whether Medicredit complied with the Rule or whether its records are current to within a week of the filing date has no bearing on whether Medicredit made unlawful disclosures to third parties. The Rule does not even cover communications with third parties.

The allegations in paragraphs 16 and 17 are wholly irrelevant. Moreover, Plaintiff already is trying to use those irrelevant allegations as a hook to engage in a fishing expedition bearing no relationship or proportion to this case. The allegations should be stricken if the Complaint is not dismissed in its entirety.

## Conclusion

The Complaint should be dismissed for failure to state a claim upon which relief can be granted. The Plaintiff's construction of § 1692c(b) of the FDCPA conflicts with the statute's text, its legislative history, and regulatory and judicial interpretations. It also would would harm consumers, create unworkable conflicts within the FDCPA, and increase the risk that debt collectors violate the FDCPA and other law. Finally, Plaintiff's construction of the FDCPA is offensive to the constitutional avoidance canon and, in fact, Plaintiff's construction of § 1692c(b) would render the law unconstitutional.

The Plaintiff's FCCPA claim fares no better. He fails to allege that the alleged recipients of information from Medicredit lacked a legitimate business need for the information, that the disclosure affected his reputation, or that Medicredit knew either of those things.

WHEREFORE, Medicredit, Inc. respectfully requests that the Court dismiss the Complaint with prejudice or, in the alternative, that the Court strike paragraphs 16 and 17 of the Complaint. Medicredit further requests that the Court enter such other or additional relief as the Court deems just and appropriate.

SL 5054470.5

Respectfully submitted,

/s/ *Drew P. O'Malley*

Drew P. O'Malley
Florida Bar No. 106551
SPENCER FANE LLP
201 North Franklin Street, Suite 2150
Tampa, FL  33602
Phone:  813-424-3500
Facsimile:  813-405-8904
domalley@spencerfane.com
ecoutu@spencerfane.com
*Counsel for Medicredit, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on this 11th day of August 2021, I filed a copy of the foregoing electronically with the Clerk of Court via ECF, which caused a copy of the foregoing to be delivered electronically to all counsel of record.

I also certify that, on the same date, a copy of the foregoing was sent by certified mail to:

U.S. Department of Justice
Attn: Merrick Garland, Attorney General
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

/s/ *Drew P. O'Malley*

Attorney

SL 5054470.5